UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| JERONIMO MAVUNGO-RAYMOND,<br>    Petitioner,<br><br>    v.<br><br>MICHAEL NESSINGER,<br>Superintendent Wyatt Detention<br>Facility; PATRICIA HYDE, Field<br>Office Director; TODD LYONS, Acting<br>Director U.S. Immigrations and<br>Customs Enforcement; KRISTI NOEM,<br>U.S. Secretary of Homeland Security;<br>and PAMELA BONDI, United States<br>Attorney General,<br>    Respondents. | C.A. No. 26-cv-013-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge United States District Court

Before the Court is Jeronimo Mavungo-Raymond's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Mr. Mavungo-Raymond is currently being held in the custody of Immigration and Customs Enforcement ("ICE") at the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. *Id.* at 1. He asserts that the Immigration Judge ("IJ") who ordered his continued detention committed "a fundamental legal error" in holding that he was statutory ineligible for release on bond. *Id.* Mr. Mavungo-Raymond now seeks immediate release from ICE custody or, in the alternative, an order directing the Government to provide him with a "constitutionally compliant bond hearing." *Id.* at 8.

The Government opposes Mr. Mavungo-Raymond's motion and has moved to dismiss it. ECF No. 5. The Government argues that Mr. Mavungo-Raymond is properly detained pursuant to ICE's statutory authority to detain noncitizens. *Id.* at 4-6.

For the reasons that follow, the Court GRANTS Mr. Mavungo-Raymond's petition and ORDERS his immediate release.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

#### 1. The Source of the Government's Detention Authority

"The government's power to detain an immigrant must be grounded in a specific provision" of the Immigration and Nationality Act ("INA"). *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018). There are two primary statutory provisions that authorize the Department of Homeland Security ("DHS") to detain noncitizens both before and after they are ordered removed from the United States. The provisions differ in several important respects.

##### a. Section 1226(a): Detention Pending the Removal Order

Section 1226(a) is the provision that permits DHS "to detain certain [noncitizens] already in the country pending the outcome of removal proceedings." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018) (citing 8 U.S.C. § 1226(a)). This statutory provision is often called the "discretionary detention statute" because it permits—but does not require—the Government to arrest and detain a noncitizen "[o]n a warrant issued by the Attorney General," or their designees, pending a

decision on whether the [noncitizen] is to be removed from the United States."[1] *Guerrero Orellana v. Moniz*, No. 25-cv-12664-PBS, -- F.Supp.3d ----, 2025 WL 2809996, at *2 (D. Mass. Oct. 3, 2025); *see also Tomas Elias v. Hyde*, No. 25-cv-540-JJM-AEM, 2025 WL 3004437, at *1 (D.R.I. Oct. 27, 2025). If the Government arrests a noncitizen on such a warrant, then the Attorney General or their designees may then continue to detain them or release them on bond of at least $1,500 or conditional parole. *Tomas Elias*, 2025 WL 3004437, at *1 (citing 8 U.S.C. §§ 1226(a)(1)-(2)).

An ICE officer "makes the initial determination for noncitizens subject to detention under section 1226(a)." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021). If the officer opts for continued detention, then the noncitizen has a Fifth Amendment Due Process right to seek review of that decision at a bond hearing (also known as a "custody redetermination hearing") before an IJ. *Id.* at 41. At that hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or (2) "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Id.* If the Government fails to meet this burden, then bond or conditional parole must be granted. *Gomes v. Hyde*, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *2 (D. Mass. July 7, 2025); *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530, at *4 (D. Me. Aug. 29, 2025)). If, however, the Government does meet its burden and

---

[1] By contrast, there is another provision within Section 1226, 8 U.S.C. § 1226(c), that requires the detention of noncitizens who have been convicted of specified crimes. *Jennings*, 583 U.S. at 289. This provision is not at issue here, however, because neither party argues that Mr. Mavungo-Raymond is detained under Section 1226(c).

3

the IJ determines that the noncitizen must remain in custody, then the noncitizen may further appeal that decision to the Board of Immigration Appeals ("BIA"). *Hernandez-Lara*, 10 F.4th at 26 (citing 8 C.F.R. § 236.1(d)(3)).

### b. Section 1231(a): Detention After the Removal Order Has Been Issued

Once a noncitizen has been "ordered removed," however, DHS's detention authority shifts to Section 1231(a). *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). The "removal period" begins on the latest of three dates: (1) "[t]he date the order of removal becomes administratively final," (2) "[i]f the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order," and (3) "if the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)). Noncitizens are subject to mandatory detention during this 90-day removal period. *Guzman Chavez*, 594 U.S. at 528 (citing 8 U.S.C. § 1231(a)(2)).

If the noncitizen is not removed within the 90-day removal period, then they are only subject to discretionary detention, meaning they "'may be detained' or may be released under terms of supervision." *Arteaga-Martinez*, 596 U.S. at 575 (quoting 8 U.S.C. § 1231(a)(6)). Unlike Section 1226(a), Section 1231(a) does not require the Government to provide a noncitizen with a bond hearing before an IJ where the

4

Government bears the burden of justifying the noncitizen's continued detention. *Id.* at 581; *Hernandez-Lara*, 10 F.4th at 39. Instead, ICE officials themselves are responsible for making determinations regarding continued detention, and they are governed by their own regulations in rendering these decisions. *Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *1 (D.R.I. Jan. 2, 2026) (citing 8 C.F.R. § 241.4; 8 C.F.R. § 241.13).

### 2. The Statutory Right to File a Motion to Reopen

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), which codified the right of every noncitizen ordered removed to file a "motion to reopen" their removal proceedings. *Dada v. Mukasey*, 554 U.S. 1, 4-5 (2008) (citing 8 U.S.C. § 1229a(c)(7)). "A motion to reopen is a form of procedural relief that asks the [BIA] to change its decision in light of newly discovered evidence or a change in circumstances since the hearing." *Id.* at 12 (internal quotations and citations omitted). "The motion to reopen is an 'important safeguard' intended 'to ensure a proper and lawful disposition' of immigration proceedings." *Kucana v. Holder*, 558 U.S. 233, 242 (2010) (quoting *Dada*, 554 U.S. at 18).

There are a few requirements a noncitizen must meet when filing such a motion. First, a motion to reopen must typically be filed within 90 days of receiving a final order of removal.[2] *Devitri v. Cronen*, 290 F. Supp. 3d 86, 92 (D. Mass. 2017)

---

[2] However, this 90-day deadline "shall not apply" if the motion to reopen is predicated on Violence Against Women Act ("VAWA") eligibility and certain other conditions are met. *Franjul-Soto v. Barr*, 973 F.3d 15, 18 (1st Cir. 2020) (citing 8 U.S.C. §§ 1229a(c)(7)(C)(iv)(I)-(IV)). Instead, VAWA self-petitioners may file their motions within "one year from the final entry of the order of removal as a matter of

(citing 8 U.S.C. § 1229a(c)(7)(C)(i)). Second, the motion "shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." *Kucana*, 558 U.S. at 238 (quoting § 1229a(c)(7)(B)). Finally, under First Circuit precedent, the motion requires the noncitizen to demonstrate "prima facie" eligibility for the relief sought. *Franjul-Soto v. Barr*, 973 F.3d 15, 18-19 (1st Cir. 2020) (citing *Carter v. INS*, 90 F.3d 14, 17 (1st Cir. 1996)).[3]

### a.   VAWA Protections

Qualifying "new facts" that permit a noncitizen to file a motion to reopen can include the noncitizen's application for relief via a Violence Against Women Act

---

course" and even beyond that if the Attorney General uses their discretion to waive the one-year time limitation. *Twum v. Barr*, 930 F.3d 10, 17 (1st Cir. 2019) (citing 8 U.S.C. § 1229a(c)(7)(C)(iv)(III)).

The timeliness of Mr. Mavungo-Raymond's motion to reopen is not at issue here and, even if it were, he nevertheless submitted the motion within 90 days of receiving a final order of removal.

[3] The regulations also contain a physical presence requirement (i.e., the "post-departure bar"), which precluded noncitizens from filing a motion to reopen if they were removed from the country. *See* 8 C.F.R. § 1003.2(d) ("Any departure from the United States, including the deportation or removal of a person … occurring after the filing of a motion to reopen … shall constitute a withdrawal of such motion."); *see also* 1003.23(b)(1). However, because filing this motion is enshrined as a statutory right, the First Circuit has recognized that noncitizens may file and continue to litigate their motions even if they are removed from the country. *See Santana v. Holder*, 731 F.3d 50, 60-61 (1st Cir. 2013). Other circuits have held the post-departure bar to be invalid. *See, e.g.*, *Prestol Espinal v. Att'y Gen.*, 653 F.3d 213, 223-24 (3d Cir. 2011); *William v. Gonzales*, 499 F.3d 329, 334 (4th Cir. 2007); *Garcia-Carias v. Holder*, 697 F.3d 257, 264 (5th Cir. 2012); *Toor v. Lynch*, 789 F.3d 1055, 1064 (9th Cir. 2015); *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 818 (10th Cir. 2012) (en banc); *Lin v. U.S. Att'y Gen.*, 681 F.3d 1236, 1241 (11th Cir. 2012).

("VAWA") self-petition.[4] *Id.* at 17 (citing 8 U.S.C. § 1229a(c)(7)(C)(iv)). This is known as the "[s]pecial rule for battered spouses, children, and parents." 8 U.S.C. § 1229a(c)(7)(C)(iv). "The self-petition must 'demonstrate[ ] to the Attorney General that ... during the marriage ... the [noncitizen] ... has been battered or has been the subject of extreme cruelty perpetrated by the [noncitizen's] spouse.'" *Franjul-Soto*, 973 F.3d at 17 (quoting 8 U.S.C. § 1154(a)(1)(A)(iii)(I)). "If, '[a]fter an investigation ... the Attorney General ... determines that the facts stated in the petition are true,' he 'shall ... approve the petition' and award classification as an immediate relative or preference immigrant, and the [noncitizen] may thereafter be eligible for a visa." *Id.* at 17-18 (quoting 8 U.S.C. § 1154(b)). "In addition, if the self-petition is granted, the Attorney General also may, 'in his discretion,' allow a VAWA self-petitioner to apply for adjustment of status to that of lawful permanent resident." *Id.* at 18 (citing 8 U.S.C. § 1182(h)).

### b.   Automatic Stay of Removal

As a preliminary matter, a stay is defined as "[t]he postponement or halting of a proceeding, judgment, or the like" or "[a]n order to suspend all or part of a judicial proceeding or a judgment resulting from that proceeding." *Stay*, Black's Law Dictionary (11th ed. 2019). Section 1229a recognizes that certain noncitizens benefit from an automatic stay of their removal proceedings pending the final disposition of

---

[4] Despite the name of the law, VAWA's protections apply regardless of sex. *See* 24 C.F.R. § 5.2001 ("Notwithstanding the title of the statute, protections are not limited to women but cover victims of domestic violence, dating violence, sexual assault, and stalking, regardless of sex, gender identity, or sexual orientation.").

7

their motion to reopen, including the exhaustion of all appeals. *See* 8 U.S.C. § 1229a(c)(7)(C)(iv); *see also S.N.C. v. Sessions*, No. 18 Civ. 7680 (LGS), 2018 WL 6175902, at *2 (S.D.N.Y. Nov. 26, 2018); *R.O.A. v. Edlow*, No. 2:25-cv-723, 2025 WL 3210930, at *8 (D. Vt. Sept. 30, 2025). The stay applies only to "qualified" noncitizens, as defined in 8 U.S.C. § 1641(c)(1)(B). 8 U.S.C. § 1229a(c)(7)(C)(iv). This term encompasses those noncitizens who can make a "prima facie" case of VAWA eligibility. 8 U.S.C. §§ 1641(c)(1)(A)-(B); *see also United States v. Contant*, 467 F. App'x 141, 142-43 (3d Cir. 2012) (recognizing that "8 U.S.C. § 1229a(c)(7)(C)(iv) provides for an automatic stay of removal" but only for "qualified" noncitizens that can make a "prima facie" showing of eligibility).

### B.  Factual and Procedural History

Mr. Mavungo-Raymond is a native and citizen of Angola. ECF No. 1 at 1, 3. He entered the United States at or around July 6, 2022. ECF No. 1-5 at 12. On November 22, 2024, while living in Maine, Mr. Mavungo-Raymond married Jennifer Lynn Raymond, a U.S. citizen. *Id.* at 4.

Following the marriage, Mr. Mavungo-Raymond claims that his spouse subjected him to "battery and extremely cruelty." *Id.* He alleges that Ms. Raymond would: (1) be physically violent toward him; (2) threaten him with harm and with threats of deportation as a means of control; (3) constantly belittle him and isolate him from support networks; (4) exert control over the couple's finances and resources; and (5) continue to escalate the violence and threats against him. *Id.*

In February 2025, ICE arrested and detained Mr. Mavungo-Raymond. ECF No. 1 at 4. DHS issued Mr. Mavungo-Raymond a Notice to Appear and placed him in removal proceedings before the Immigration Court. ECF No. 1-5 at 4.

For a while, ICE held Mr. Mavungo-Raymond at the Cumberland County Jail in Portland, Maine. *Id.* at 3. ICE later transferred him to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1 at 1, 3. In total, Mr. Mavungo-Raymond has remained detained for more than 10 months. *Id.* at 4.

On May 9, 2025, an IJ of the Chelmsford Immigration Court found Mr. Mavungo-Raymond to be removable under 8 U.S.C. § 1227(a)(1)(C)(i)[5] and ordered him removed to Angola. ECF No. 5 at 2; ECF No. 5-1 at 2-4. Mr. Mavungo-Raymond appealed this decision, but the BIA dismissed his appeal on October 7, 2025. ECF No. 1 at 4; *see also* ECF No. 5-2.

On October 15, 2025, Mr. Mavungo-Raymond filed a VAWA self-petition with U.S. Citizenship and Immigration Services ("USCIS"). ECF No. 1 at 4. Based on this petition, Mr. Mavungo-Raymond filed a motion to reopen his case with the BIA. *Id.* at 5; *see also* ECF No. 1-5. He asserts that this filing "triggered an automatic statutory stay of removal" under Section 240(c)(7)(C)(iv) of the INA (which is codified at 8 U.S.C. § 1229a(c)(7)(C)(iv)). ECF No. 1 at 5.

---

[5] This provision makes deportable any noncitizen "who has failed to maintain the nonimmigrant status in which the [noncitizen] was admitted … or to comply with the conditions of any such status." *Öztürk v. Trump*, No. 25-cv-12334-DJC, 2025 WL 3514320, at *8 (D. Mass. Dec. 8, 2025) (quoting 8 U.S.C. § 1227(a)(1)(C)(i)).

9

Mr. Mavungo-Raymond subsequently requested a bond hearing before an IJ. *Id.* The Immigration Court held a hearing on December 11, 2025, and the IJ went on to deny Mr. Mavungo-Raymond's request for bond, finding that he posed a "flight risk." *Id.*; *see also* ECF No. 5-3 at 2.

A day later, on December 12, 2025, the IJ issued a *sua sponte* superseding order that vacated her earlier "flight risk" determination. ECF No. 1 at 5. The IJ instead held that, because Mr. Mavungo-Raymond is subject to a "final order of removal," he is statutorily ineligible for bond under Section 241(a)(2)(A) of the INA (which is codified at 8 U.S.C. § 1231(a)(2)(A)). ECF No. 1-3 at 1.

On December 30, 2025, Mr. Mavungo-Raymond filed a motion to reconsider with the Immigration Court, arguing that the automatic stay in his case "suspended the finality of the [removal] order and shifted detention authority to INA § 236" (which is codified at 8 U.S.C. § 1226). ECF No. 1 at 5.

On January 2, 2026, the IJ denied Mr. Mavungo-Raymond's motion to reconsider. *Id.* Specifically, the IJ stated:

> The 12/11/2025 order was incorrect which is why the Court issued the corrected order on 12/12/2025 indicating the reason for the denial was the final order of removal. It was a superseding order, nullifying the 12/11/2025 order. When the appeal date is left blank, the parties must adhere to the statutory and regulatory deadlines.
>
> Bond and removal proceedings are separate. [Mr. Mavungo-Raymond] had not filed evidence in the bond record to establish that he was eligible for a redetermination under INA sec. 236(c).
>
> [Mr. Mavungo-Raymond] was ordered removed by the immigration judge. The [BIA] dismissed [Mr. Mavungo-Raymond's] appeal. [Mr. Mavungo-Raymond] has filed a motion to reopen. Despite having an auto-stay of removal, [Mr. Mavungo-Raymond] is still under a final

10

order of removal unless and until the [BIA] reopens proceedings. [Mr. Mavungo-Raymond] cites to no provision of law that stands for the proposition that a stay of a final order of removal creates bond eligibility when a motion to reopen has yet to be granted.

ECF No. 1-2 at 1.

Mr. Mavungo-Raymond filed the instant habeas petition on January 9, 2026. *Id.* at 1. He asserts that the IJ committed "a fundamental legal error" when she ruled that he was detained under Section 1231(a) and was therefore ineligible for bond.[6] *Id.* He now seeks immediate release from ICE custody or, in the alternative, an order that the Government provide him with a "constitutionally compliant" bond hearing. *Id.* at 8. The Government objects and seeks to dismiss the petition. ECF No. 5.

## II. DISCUSSION

### A. Is Mr. Mavungo-Raymond Detained Under Section 1231(a) or Section 1226(a)?

This case ultimately turns on whether Mr. Mavungo-Raymond is being detained pursuant to Section 1231(a) or Section 1226(a) of the INA. Underlying that determination is the following question: What effect, if any, does Mr. Mavungo-Raymond's pending motion to reopen have on ICE's authority to detain him? The Court will now proceed to answer that question.

---

[6] Mr. Mavungo-Raymond also argues that he has been subject to "prolonged detention" in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 1 at 7. *Zadvydas* permits noncitizens to challenge their detention if they have been detained for longer than six months and can "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (quoting Zadvydas, 533 U.S. at 699-700). Because the Court decides this case on other grounds, it need not reach Mr. Mavungo-Raymond's *Zadvydas* claim.

As mentioned earlier, Mr. Mavungo-Raymond filed with USCIS a VAWA self-petition, which remains pending. ECF No. 1 at 4. Based on this self-petition, he then filed with the BIA a motion to reopen his prior removal order. *Id.* at 5. Filing the latter motion is Mr. Mavungo-Raymond's statutory right, as recognized by the Supreme Court. *Dada*, 554 U.S. at 4-5 (citing 8 U.S.C. § 1229a(c)(7)); *see also Kucana*, 558 U.S. at 242. This motion also remains pending.

Under the "[s]pecial rule for battered spouses, children, and parents," the filing of a motion to reopen has the effect of "stay[ing] the removal … pending the final disposition of the motion, including exhaustion of all appeals." 8 U.S.C. § 1229a(c)(7)(C)(iv). Critically, this automatic stay of removal proceedings applies only to "qualified" noncitizens, that is, those noncitizens who can make out a "prima facie" case of VAWA eligibility. *Id.* (citing 8 U.S.C. §§ 1641(c)(1)(B)); *see also Contant*, 467 F. App'x at 142-43.

The question then becomes: Is Mr. Mavungo-Raymond a "qualified" noncitizen that is entitled to the automatic stay? As one judge has pointed out, "the statute is silent as to how, when, or by whom the determination whether [a noncitizen] has made out a prima facie case for relief should be made." *Nava v. Ceja*, 546 F. App'x 629, 633 (9th Cir. 2013) (Wardlaw, J., dissenting). At least one court has determined that it lacks jurisdiction to consider whether a petitioner is entitled to the automatic stay under Section 1229a(c)(7)(C)(iv). *See Contant v. Decker*, No. 3:10cv2483, 2011 WL 320627, at *2-3 (M.D. Pa. Jan. 28, 2011). Another court has ruled that a petitioner was *not* a "qualified" noncitizen and was therefore not eligible to have the

automatic stay apply to her removal proceedings. *Zavala v. Wolf*, No: 6:20-cv-348-Orl-40GJK, 2020 WL 13547823, at *2 (M.D. Fla. Feb. 28, 2020).

The Court need not linger long over this question.[7] An IJ has recognized that the automatic stay of removal applies to Mr. Mavungo-Raymond, thereby acknowledging that he is a "qualified" noncitizen under Section 1229a(c)(7)(C)(iv). *See* ECF No. 1-2 at 1 (displaying the IJ's order, which recognized that Mr. Mavungo-Raymond has "an auto-stay of removal"). With this automatic stay in place, the Court now turns to the language of Section 1231(a).

As discussed above, the commencement of the 90-day removal period—and, by extension, the applicability of Section 1231(a)—may be postponed under certain circumstances. *D'Ambrosio v. McDonald*, 793 F. Supp. 3d 271, 276 (D. Mass. 2025). Under the statute, "[t]he removal period begins on the latest of the following":

(i) *The date the order of removal becomes administratively final.*

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.

(iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement.

---

[7] Though the Court need not decide whether the automatic stay applies to Mr. Mavungo-Raymond, it would appear that, for the purposes of the motion to reopen, he is a "qualified" noncitizen with a "prima facie" case of VAWA eligibility. *See Contant*, 467 F. App'x at 142-43. There is no dispute that he filed his motion within 90 days of his final removal order being entered. *See* 8 U.S.C. §§ 1229a(c)(7)(C)(iv)(III), (IV). In addition, he has demonstrated that he is married to a U.S. citizen and has submitted a detailed description about how his spouse subjected him to "battery and extreme cruelty." ECF No. 1-5 at 4; *see* 8 U.S.C. §§ 1641(c)(1)(A)-(B).

13

8 U.S.C. § 1231(a)(1)(B) (emphasis added).

Here, Mr. Mavungo-Raymond's removal order became "administratively final" on October 7, 2025, when the BIA dismissed his appeal of the IJ's entry of a final order of removal. ECF No. 1 at 4; *see* 8 C.F.R. § 1241.1(a) (explaining that "[a]n order of removal made by the immigration judge ... shall become final ... [u]pon dismissal of an appeal by the Board of Immigration Appeals").

However, that removal order was later stayed upon Mr. Mavungo-Raymond's filing of his motion to reopen his removal proceedings, based on his VAWA self-petition, on November 10, 2025. *See* ECF No. 1-2 at 1 (recognizing that Mr. Mavungo-Raymond is subject to "an auto-stay of removal"). This is significant because the "stay and the possibility of further review at the [BIA] impact the authority under which [Mr. Mavungo-Raymond] can be detained."[8] *Valladares v. Hyde*, No. 1:25-cv-13271-IT, 2025 WL 3719643, at *3 (D. Mass. Dec. 23, 2025).

As a result of the stay, Mr. Mavungo-Raymond is now no longer subject to an "administratively final" removal order. *See Valladares*, 2025 WL 3719643, at *3-4 (holding that petitioner, who had filed a yet-undecided motion to reopen, was not subject to an "administratively final" removal order while his removal order remained stayed); *see also D'Ambrosio*, 793 F. Supp. 3d at 276 ("If the removal order has been

---

[8] The Government seems to suggest that the motion to reopen does not "alter the detention statute ... unless and until reopening is granted." ECF No. 5 at 6. However, those who benefit from Section 1229a(c)(7)(C)(iv) are not limited to those noncitizens whose motions have been granted by the BIA. The plain text of the statute makes clear that its protections apply to those who merely engage in "[t]he filing of a motion to reopen," as Mr. Mavungo-Raymond has done. 8 U.S.C. 1229a(c)(7)(C)(iv).

14

stayed, then the individual subject to the order is not within any removal period." (internal quotations and citations omitted)).[9]

This is so because a "stay" in immigration proceedings "suspends the effect of the removal order."[10] *Nken v. Holder*, 556 U.S. 418, 429 n.1 (2009). As the Supreme Court has explained, the stay essentially returns things to the "status quo—the state of affairs *before* the removal order was entered." *Id.* at 429 (emphasis added). In addition, should the BIA ultimately grant Mr. Mavungo-Raymond's motion to reopen, that would "necessarily extinguish the finality of the removal order." *Id.* at 429 n.1.

Therefore, if "[t]he removal period begins on the *latest* of" three circumstances, including the administrative finality of a removal order, *see* 8 U.S.C. § 1231(a)(1)(B) (emphasis added), and where, as here, Mr. Mavungo-Raymond is no longer subject to an administratively final removal order, then it follows that Section 1231(a) is no longer applicable to Mr. Mavungo-Raymond. *See Valladares*, 2025 WL 3719643, at *4 ("Section 1231 is thus inapplicable to Petitioner while his removal order is

---

[9] The Government argues that "§ 1231 does not disturb the finality of removal orders based on administrative or statutory stays arising from agency proceedings." ECF No. 5 at 5. In support of its position, the Government cites *Castillo-Perez v. Lowe*, No. 1:20-cv-02271, 2020 WL 7183579 (M.D. Pa. Dec. 7, 2020). That case is inapposite, given that the court in that case primarily analyzed the petitioner's claim under *Zadvydas*, which is not the ground under which this Court is analyzing Mr. Mavungo-Raymond's claim. *Castillo-Perez*, 2020 WL 7183579, at *4.

[10] It is important to note that the stay does not "vacate" the removal order, as the Government suggests in its briefing. *See* ECF No. 5 at 6. Vacatur has the effect of "mak[ing] void" and rendering something "of no legal effect" anymore. *Vacate*, Black's Law Dictionary (11th ed. 2019). A stay, by contrast, is "the *temporary* setting aside of the source of the Government's authority to remove." *Nken*, 556 U.S. at 429 (emphasis added). If the motion to reopen is granted, however, then that action would itself "vacate[ ] the final order of removal." *Id.* at 429 n.1.

15

stayed."). Instead, because the Government has not alleged that he is subject to any other mandatory detention provision of the INA, Mr. Mavungo-Raymond's "detention is properly governed by 8 U.S.C. § 1226(a)." *Id.* (citing *Brown v. Lanoie*, 2014 WL 12586735, at *2-3 (D. Mass. Aug. 4, 2014); *Velasco Lopez v. Decker*, 978 F.3d 842, 852 (2d Cir. 2020); *D'Ambrosio*, 793 F. Supp. 3d at 276).

### B. Did the IJ in Mr. Mavungo-Raymond's Case Commit Legal Error?

#### 1. Subject-Matter Jurisdiction

Now that the Court has found that Mr. Mavungo-Raymond is subject to the discretionary detention statute under Section 1226(a), the next step is to review the IJ's decision to deny him release on bond. Here, the Court takes a brief detour to discuss its subject-matter jurisdiction over this matter. Though neither of the parties have raised it, this Court is always "under an unflagging duty to ensure that it has jurisdiction over the subject matter of the cases it proposes to adjudicate." *Am. Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993).

Generally, federal courts may not review "discretionary judgment[s]" regarding "the grant, revocation, or denial of bond or parole." *Saint Fort v. Ashcroft*, 329 F.3d 191, 200 (1st Cir. 2003) (quoting 8 U.S.C. § 1226(e)). However, federal courts are not precluded from retaining "habeas jurisdiction over constitutional claims or questions of law." *Garcia v. Hyde*, No. 25-cv-585-JJM-PAS, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)). Indeed, "district courts have jurisdiction to review [an] Immigration Judge's discretionary bond denial only 'where that bond denial is challenged as legally

16

erroneous or unconstitutional.'" *Id.* (quoting *Mayancela v. FCI Berlin, Warden*, No. 25-cv-348-LM-TSM, 2025 WL 3215638, at *6 (D.N.H. Nov. 18, 2025)).

Here, Mr. Mavungo-Raymond does *not* challenge the IJ's discretionary judgment. Instead, he challenges as "a fundamental legal error" the IJ's decision to hold him without access to a bond hearing. ECF No. 1 at 1. This Court therefore has jurisdiction to review such a decision and will now turn to the merits of Mr. Mavungo-Raymond's challenge. *See Garcia*, 2025 WL 3466312, at *5; *Mayancela*, 2025 WL 3215638, at *6.

2. **The Merits**

In her December 12, 2025 order, the IJ in Mr. Mavungo-Raymond's case held that he was "ineligible for release on bond as he [is] subject to a final order of removal."[11] ECF No. 1-3 at 1. When Mr. Mavungo-Raymond asked for reconsideration of that decision, the IJ denied that request and stated again that "the reason for the denial was the final order of removal." ECF No. 1-2 at 1.

The Court finds that these two decisions by the IJ were legal error. While the IJ is correct that "[b]ond and removal proceedings are separate," *see* ECF No. 1-2 at 1, it is also true that the two proceedings are closely related. Recall that Section 1226(a) is the provision governing detention *before* a noncitizen is ordered removed, *see Jennings*, 583 U.S. at 289, whereas Section 1231(a) is the detention provision that controls *after* a noncitizen is ordered removed, *see Guzman Chavez*, 594 U.S. at 528.

---

[11] This order superseded and nullified the IJ's earlier order, which denied Mr. Mavungo-Raymond release on bond based on a finding of flight risk. *See* ECF No. 1-3 at 1; *see also* ECF No. 1-2 at 1.

17

Now consider the automatic stay in place while Mr. Mavungo-Raymond's motion to reopen remains pending, a stay that has the effect of "suspend[ing] … the removal order" and returning things to the "status quo—the state of affairs before the removal order was entered." *Nken*, 556 U.S. at 429. It stands to reason that returning to the state of affairs before Mr. Mavungo-Raymond was ordered removed would shift DHS's detention authority away from Section 1231(a) and back to Section 1226(a). *Cf. Romero v. Hyde*, 795 F. Supp. 3d 271, 281 (D. Mass. 2025) (recognizing that, upon being ordered removed, ICE's authority to detain petitioner shifted from Section 1226 to Section 1231(a) but then, upon the reopening of petitioner's removal proceedings, that detention authority "shifted back" to Section 1226).

Thus, because he is detained under Section 1226(a), it was legal error for the IJ to conclude that he was ineligible for release on bond. This Court holds that, not only is Mr. Mavungo-Raymond eligible for a bond hearing, but he in fact has a Fifth Amendment Due Process right to such a hearing. *See Hernandez-Lara*, 10 F.4th at 41. At this hearing, the Government bears the burden of proving either: (1) "by clear and convincing evidence that [he] poses a danger to the community" or (2) "by a preponderance of the evidence that [he] poses a flight risk." *Id.*

This Court has ordered the immediate release of individuals who have been detained subject to Section 1226(a) while they await their bond hearings. *See, e.g.*, *Tomas Elias*, 2025 WL 3004437, at *5; *Tejada Polanco v. Hyde*, Nos. 25-cv-552-JJM-AEM, 25-cv-561-JJM-AEM, 2025 WL 3033926, at *2 (D.R.I. Oct. 30, 2025); *Herrera Martinez v. Hyde*, No. 25-cv-575-JJM-AEM, 2025 WL 3124025, at *2 (D.R.I. Nov. 7,

18

2025); *Barrera Rodriguez v. Hyde*, No. 25-cv-607-JJM-PAS, 2025 WL 3274606, at *2 (D.R.I. Nov. 25, 2025); *Mendes v. Hyde*, No. 25-cv-627-JJM-AEM, 2025 WL 3496546, at *2 (D.R.I. Dec. 5, 2025).  Given that he too is subject to Section 1226(a), the Court finds that Mr. Mavungo-Raymond's immediate release is appropriate.

### III.  CONCLUSION

For all these reasons, the Court GRANTS Mr. Mavungo-Raymond's habeas petition.  ECF No. 1.  The Government is ORDERED to provide Jeronimo Mavungo-Raymond with a bond hearing before an IJ under 8 U.S.C. § 1226(a) within ten days of the date of this order.  The Court further ORDERS the Government to **release Jeronimo Mavungo-Raymond immediately** pending the bond hearing.  The Government shall set minimal release conditions that will reasonably assure his appearance at the bond hearing.  Finally, the Court ORDERS the Government to file a status report within five days of Mr. Mavungo-Raymond's bond hearing, stating whether he has been granted bond and, if his request for bond was denied, the reason for that denial.

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

_____
John J. McConnell, Jr
Chief Judge
United States District Court


January 21, 2026

19